United States District Court
Southern District of Texas
FILED

JUN 15 1995

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CIVIL ACTION NO. H- |
| Plaintiff, | § § § | H-95-3182 |
| v. | § | |
| $9,041,598.68 (NINE MILLION FORTY ONE THOUSAND, FIVE HUNDRED NINETY EIGHT DOLLARS AND SIXTY EIGHT CENTS) | § § § § § § | |
| Defendant. | § | |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, Plaintiff, alleges upon information and belief the following:

1. This is a civil action *in rem* brought against $9,041,598.68 (Nine million, forty one thousand, five hundred ninety eight dollars and sixty eight cents) in U.S. Currency, (hereinafter defendant currency) to enforce the provisions of:

A. 21 U.S.C. § 881(a)(6) which provides for the forfeiture of currency which was used or intended to be used in exchange for controlled substances or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*;

B. 18 U.S.C. § 981(a)(1)(A) which provides for the forfeiture of currency involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957(a);

C. 18 U.S.C. § 981(a)(1)(A) which provides for the forfeiture of currency involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956; and/or

D. 18 U.S.C. § 981(a)(1)(B) which provides for the forfeiture of property in the United States constituting, derived from or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation involving the manufacture, distribution, importation, or sale of controlled substances punishable by imprisonment of over one year in the foreign nation and in the United States, if the conduct had occurred here.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

3. On or about March 13, 1995, the Defendant Currency was seized pursuant to a seizure warrant executed at Texas Commerce Bank in Houston, Texas, within the jurisdiction of this Court, by duly authorized agent(s) of the United States Customs Service.

4. The account at Texas Commerce Bank (TCB), from which the defendant currency was seized is account no. 08100355370. The account is in the name Mario Ruiz Massieu (Massieu). Massieu is presently in federal custody in New Jersey. Massieu had arrived at the Houston Intercontinental Airport on Thursday, March 2, 1995. On his declaration, Massieu stated that he would be staying in Houston, Texas for three weeks.

On March 3, 1995, Massieu, his wife and daughter boarded a flight from Houston to Newark, New Jersey enroute to Spain. Before leaving the United States, Massieu was approached by Customs

(2)

officers and asked if he was carrying in excess of $10,000 in currency or negotiable instruments. Massieu reported that he was carrying approximately $18,000 in currency. A count of Massieu's money revealed that he actually had approximately $46,000 in his possession. Massieu was arrested for violations of Title 31 U.S.C. §5316 (Reports on Exporting and Importing Monetary Instruments).

When asked about the undeclared money in New Jersey, Massieu's wife said that they received money from Arturo (Massieu's brother) in Houston, Texas. Massieu claimed the money was from earnings, brought with them from Mexico. Massieu denied having relatives in Houston, Texas. Customs has no record of a CMIR report completed by Massieu upon entry into Houston, on March 2, 1994.

Massieu was a Deputy Attorney General of the Republic of Mexico who resigned on or about November 23, 1994. The investigation resulting in the seizure of the defendant currency, which began after his resignation, revealed that:

Massieu, in his position as Deputy Attorney General had been in charge of criminal investigations of narcotics trafficking activities in Mexico. His duties (among others) included the appointment of prosecutors in Mexico. The current investigation also revealed that in his position as a Deputy Attorney General of the Republic of Mexico, he would be in a position to know when United States law enforcement would request assistance from the Mexican government and the substance of the request.

The TCB bank account was opened on December 2, 1993, with the bank statements held for customer pick-up. After December 2, 1993, some 24 deposits were made to the account.

Information from Currency Transaction Reports (CTRs), shows that the first deposit to the account was made on December 2, 1993 by Massieu (the date the account was opened) in the amount of $40,000 with all other deposits made by Jorge Stergios (Stergios) purportedly conducted on the behalf of Massieu. Stergios was an internal auditor with the Deputy Attorney General's office in Mexico. He resigned his position on or about December 1, 1994. All deposits to the account were made in cash, in United States currency.

Stergios brought the money to the bank in suitcases, and stated that the source of the U.S. Currency being deposited into the account was from the sale of properties by Massieu. The predominate denominations of the defendant currency was twenty dollar bills. As an example, of the $264,940 deposited to the account on April 28, 1994, $228,300 of that deposit was made in twenty dollar bills.

The defendant currency was often bundled with rubber bands and wrapped in a plastic type of tape, consistent with bundled proceeds of large scale narcotics trafficking. The defendant currency was not invested, the reason given by Stergios was immediate liquidity. On occasion the bundles of money included counterfeit bills, which is also consistent with large scale narcotics trafficking.

(4)

The following is a chronological list of deposits to the account from the bank's CTR information, the amount of each deposit and the number of "$100 bills or higher" (where available) in United States currency, (the remainder of the deposited currency was in denominations smaller than $100 bills):

| DATE OF DEPOSIT: | | AMOUNT: | NUMBER OF $100 BILLS: | |
|---|---|---|---|---|
| **1994:** | | | | |
| MAR | 02 | $ 477,320 & 1960 | 435 | ($43,500) |
|  | 04 | 200,069 | 0 | |
|  | 09 | 300,820 | 0 | |
|  | 11 | 227,840 | 0 | |
|  | 16 | 259,920 | 0 | |
| APR | 07 | 615,210 | 3090 | ($309,000) |
|  | 14 | 454,160 | 1576 | ($157,600) |
|  | 21 | 319,940 | 0 | |
|  | 28 | 264,940 | 300 | ($30,000) |
| MAY | 09 | 240,000 | 0 | |
|  | 16 | 408,050 | 561 | ($56,100) |
| JUN | 07 | 366,885 | 400 | ($40,000) |
|  | 13 | 369,980 | 0 | |
|  | 29 | 458,740 | 0 | |
| AUG | 31 | 299,000 | 0 | |
| SEP | 07 | 119,500 | 0 | |
|  | 14 | 331,980 | n/a | |
|  | 21 | 264,000 | 0 | |
|  | 28 | 384,235 | 0 | |
| OCT | 21 | 448,000 | n/a | |
| NOV | 08 | 349,000 | 0 | |
| **1995:** | | | | |
| JAN | 17 | $ 322,500 | 0 | |
|  | 30 | 799,000 | 1200 | (120,000) |
| FEB | 08 | 340,000 | 0 | |
|  | 14 | 416,000 | 0 | |

(5)

A review of the Department of Treasury, International Transportation of Currency or Monetary Instrument Reports (CMIRs) do not show a corresponding CMIR for the December 2, 1993 initial deposit to the account of $40,000. The deposit was in $100 bills, United States currency.

After the account was opened Stergios made the deposits. Stergios flew into Houston from Mexico City, Mexico the same day the following deposits were made: March 2, 9, 11 and 16; April 7, 14, and 28; May 9; June 7 and 29; August 31; September 7 and 28; and November 8, 1994. He returned to Mexico City, Mexico, the same day, except for his March 9, 1994 arrival where he returned to Mexico on March 10, 1994.

On September 14, 1994 and December 16, 1994 Massieu travelled to Houston, Texas. On December 16, 1994 Massieu and Stergios were on the same flight to Houston. A CMIR was completed by Stergios declaring that he was transporting $110,000 on behalf of Mario Ruiz. On December 16, 1994 a $98,000 deposit was made to another account at Bank One, Houston; account holder, Mario Ruiz. This account was opened on September 15, 1994, customer's address given was 374 Litchfield, Houston, Texas. The property at 374 Litchfield is titled to Arturo Massieu.

Customs Inspectors at Intercontinental Airport in Houston, Texas interviewed Stergios when he arrived in Houston, transporting some of the money referred to above. Stergios would bring the money into Houston, Texas in a large hard sided suitcase and/or a medium soft sided suitcase. The money appeared to be in $5,000 or

(6)

$10,000 bundles secured by rubber bands. Stergios told one Customs Inspector that he was a lawyer and that he represented several clients in the real estate business and that the funds were from real estate investments in Mexico. Stergios told another that he was an attorney, that the money belonged to his partner and that the money was the firm's money. Stergios was interviewed by a Customs agent on three occasions around March, 1994. Stergios was then carrying the defendant currency in cardboard boxes, in bundles secured by rubber bands. Stergios said that he was carrying the money for his boss, the Ministry de Publico. When asked about the source of the money, Stergios said it was his boss's personal money, and that his boss wanted to get it out of Mexico.

Except for the June 7, 1994 deposit to the account from which the defendant currency was seized, the sum of money declared by Stergios to Customs is always different than the amount of money deposited. On March 2, and 4, 1994, the amount of money declared to Customs on the CMIR is less than the amount of money reported on the CTR (bank deposit report).

Between March 2, 1994 and November 8, 1994, there was a total of $416,771 declared on the CMIRs but not reported on the CTRs. $416,771 is approximately 5.664% of the total monies carried by Stergios into the United States, and is consistent with the fees paid to couriers of narcotics trafficking proceeds.

Documents received from Mexico reflect that Massieu's reported income totaled approximately $100,000 as of December 13, 1994;

Stergios' reported income totaled approximately $50,000 as of December 23, 1994.

On the evening of March 6, 1995, (after Massieu's arrest), an employee at Texas Commerce Bank was contacted around midnight by Stergios. Stergios asked the bank official a number of questions, including: 1) was it possible to split the funds into several accounts, 2) what would it take to transfer these funds into an overseas account, namely Switzerland, and 3) could it be done without being able to trace the movement of the funds. Stergios advised the bank employee that he would be getting back to him and refused to advise the bank employee of his whereabouts.

From information received in another case, United States law enforcement knows that Mexican law enforcement officials have received payment in Mexico to facilitate the transportation of drugs from Mexico into the United States and the return of narcotics trafficking proceeds back into Mexico. The payments are made to the "secretary" (bagman) of the law enforcement officials by the drug trafficking organization. The bagman would request and receive payments from the narcotics traffickers even if the Mexican official (to whom the payment was made) was present. In this manner, thousands of dollars have been paid in Mexico to facilitate the movement of narcotics through Mexico into the United States.

Customs agents have received information from more than one cooperating individual who have provided reliable information in the past concerning receipt of money by Massieu from narcotics traffickers for protection.

Narcotics traffickers in Mexico pay money to facilitate the transportation of narcotics from Mexico into the United States, and to facilitate the return of drug proceeds from the United States into Mexico. The recipients of the money include law enforcement officials in Mexico.

Large scale narcotics traffickers amass millions of dollars in United States currency from the sale of controlled substances in the United States. A review of the number of $100 bills deposited in the account reflect that the money was primarily in "street denominations", which denominations are consistent with proceeds derived from narcotics trafficking activities.

There is probable cause to believe that the defendant currency, which was transported by Stergios into the United States and deposited into the account constitute narcotics trafficking proceeds given to facilitate the movement of drugs into the United States and that the defendant currency is forfeitable to the United States of America.

5. The Defendant Currency was used, or intended to be used, in exchange for controlled substances, or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 <u>et seq</u>., and is therefore subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6); the defendant currency is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A) which provides for the forfeiture of currency involved in a transaction or attempted transaction in violation of

18 U.S.C. § 1957(a); the defendant currency is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A) which provides for the forfeiture of currency involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956; and/or 18 U.S.C. § 981(a)(1)(B) which provides for the forfeiture of property in the United States constituting, derived from or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation involving the manufacture, distribution, importation, or sale of controlled substances punishable by imprisonment of over one year in the foreign nation and in the United States, if the conduct had occurred here.

WHEREFORE, the United States of America prays:

1. Monition issue according to the normal procedure of this Court citing all persons having an interest in the above described Defendant Currency to appear on the return day of process by filing a claim and answer pursuant to Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims, or as ordered by the Court;

2. That Warrant of Arrest issue to the United States Customs Service commanding the arrest of the Defendant Currency;

3. That judgment of forfeiture to the United States be decreed against the Defendant Currency; and

4. For costs and such other and further relief to which Plaintiff may be entitled.

        Respectfully submitted,

        GAYNELLE GRIFFIN JONES
        United States Attorney

By: 
     (713) 567-9563
     SUSAN KEMPNER
     Assistant United States Attorney
     FBN: 6507 \ TBN: 11259700
     PO Box 61129
     Houston, Texas 77208

(11)

## VERIFICATION

I, Susan Kempner, declare under penalty of perjury as provided by Title 28, United States Code, Section 1746, that the foregoing Complaint for Forfeiture <u>In</u> <u>Rem</u> is based on reports and information furnished to me by the United States Customs Service, Internal Revenue Service, Drug Enforcement Administration and Federal Bureau of Investigation and that everything contained therein is true and correct to the best of my knowledge and belief.

EXECUTED on this the _15th_ day of _June_, 1995.

_____
SUSAN KEMPNER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the complaint for forfeiture was served on:

Mario Ruiz Massieu: by personal service

and on:

Tony Canales
Canales & Simonson, P.C.
2601 Morgan Ave.
Corpus Christi, TX 78465-5624

by Certified mail: P028 058 147

on this the 15th day of June, 1995.

_____
Susan Kempher